(596 P.2d 1250)

No. 50,092

HERBERT P. LINDSLEY, *Appellee,* v. FORUM RESTAURANTS, INC., *Appellant.*

Petition for review denied September 11, 1979.

490

Opinion filed July 6, 1979.

*Charles E. Hoffhaus* of Hillix, Brewer, Hoffhaus & Whittaker, of Kansas City, Missouri, and *John E. Foulston* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, for the appellant.

*Milo M. Unruh* and *H. Allan Caldwell* of Arn, Mullins, Unruh, Kuhn & Wilson, of Wichita, for the appellee.

Before MEYER, P.J., REES and SPENCER, JJ.

SPENCER, J.: This is an action to recover rental provided for in a lease on commercial property in Wichita. The jury returned its verdict for the full amount claimed by plaintiff and defendant has appealed.

The lease in question was executed September 29, 1953, for a term beginning October 1, 1953, and ending September 30, 1983. Plaintiff is the owner of the premises and the present lessor under the lease. Defendant is the present lessee.

Defendant operated a cafeteria on the premises until May, 1973, when it ceased operations. Defendant continued to pay monthly rent through October, 1974. By letter dated October 14, 1974, defendant notified plaintiff of its intention to abandon the lease and to discontinue the payment of rent. Defendant, by that means also reminded plaintiff of his duty to make reasonable efforts to secure a new tenant. There is no claim that plaintiff accepted surrender of the lease, and it is agreed that the only controverted issue in the case is whether plaintiff made a reasonable effort to mitigate damages.

Defendant's first two issues on appeal are that the court erred in giving its instruction No. 7 to the effect that, as a matter of law, the relationship of principal and agent existed between plaintiff and the Weigand Company; and that it was error to exclude evidence as to whether plaintiff or defendant was to pay Weigand's commission.

Defendant argues that the evidence was such that the court should have instructed the jury to determine between which parties an agency existed. The position is that plaintiff personally made very little effort to relet the premises; that Weigand was in fact defendant's agent rather than plaintiff's; that Weigand's efforts could not therefore be attributed to plaintiff; and the question of plaintiff's reasonable diligence to mitigate damages should have been decided without consideration of those efforts.

The relationship between a customer and a real estate broker is that of agency and the general rules applicable to principal and agent govern their rights and liabilities. Agency can result only from contract, express or implied, and in determining whether a valid contract has been entered into, the rules which pertain to contracts generally are applicable. There must be consideration, mutuality, and a meeting of the minds as to essential matters. The latter may be shown by implication from the conduct of the parties. The burden of establishing the agency is upon the party asserting it. *Lord v. Jackman,* 206 Kan. 22, 26, 476 P.2d 596 (1970); *Hiniger v. Judy,* 194 Kan. 155, 158, 398 P.2d 305 (1965); *Patee v. Moody,* 166 Kan. 198, 202-203, 199 P.2d 798 (1948).

Our review of the record reveals an abundance of evidence to support a contract of agency between plaintiff and Weigand as a matter of law. Both plaintiff and Weigand testified as to the existence of the agency relationship between them and there is virtually no evidence to the contrary.

There was no dispute between plaintiff and Weigand as to whether a commission would be paid if Weigand was successful in securing a tenant. Evidence as to whether any consideration would pass from plaintiff to Weigand, as well as defendant's proffer that plaintiff had no commission arrangement with Weigand, was not relevant to the issue here involved. No error has been shown.

Error is contended in the giving of instruction No. 2, which provided in part:

"If you find that the plaintiff has made a reasonable effort to obtain a tenant for the property at 115 South Market, then you must find in favor of the plaintiff.

"If you find for the plaintiff, then your verdict must be for the plaintiff in the amount of $93,698.48.

"If you find that the plaintiff has not made a reasonable effort to obtain a tenant, you should return a verdict for the defendant."

It is argued that the unfairness of the "all or nothing" approach is apparent; that the jury was presented with an admittedly valid lease which defendant had admittedly breached; and that the inclination to grant plaintiff relief under these facts would have been overwhelming. Defendant claims that, with this instruction, the jury had no choice but to find that plaintiff did exercise reasonable diligence.

The problem with defendant's argument is that the evidence as

revealed by the record is overwhelming in support of plaintiff's position and almost completely devoid of any proof of plaintiff's failure to exercise reasonable efforts to mitigate his damages. Upon receipt of defendant's letter notifying him of the abandonment of the premises, plaintiff contacted Weigand, who is recognized by both parties to be among the best qualified in his field, and urged him to be as diligent as possible in securing a tenant. Plaintiff made contacts with other realtors and sought the assistance of a local banker. He had extra keys made to permit inspection of the premises. The evidence reveals that the vacancy was advertised and the premises were shown to various prospective tenants. Plaintiff transmitted all proposals of which he had knowledge for the approval of defendant. He did not reject any offers to relet the property, as none were received.

"Where a tenant, under contract to pay rent on real property, abandons the property and notifies the landlord of that abandonment, it is the landlord's duty to make a reasonable effort to secure a new tenant and obtain rent before he can recover from the old tenant under the contract so as to lessen the injury." *Gordon, Executor v. Consolidated Sun Ray, Inc.,* 195 Kan. 341, Syl. ¶ 3, 404 P.2d 949 (1965).

"It is a general rule of law that one injured by reason of breach of contract by another is under a duty to exercise reasonable care to avoid loss or to mitigate and minimize the resulting damage. Such reasonable care does not require a party to execute a new or different contract." *Iseman v. Kansas Gas & Electric Co.,* 222 Kan. 644, Syl. ¶ 1, 567 P.2d 856 (1977).

"The duty to mitigate damages is not an unlimited one and an injured party is required only to exert reasonable efforts to prevent or minimize his damages within the bounds of common sense." *Steele v. J. I. Case Co.,* 197 Kan. 554, Syl. ¶ 5, 419 P.2d 902 (1966).

In the absence of any evidence of plaintiff's failure to make reasonable efforts to mitigate, the instruction as given by the court was proper.

Finally, defendant argues that it was error not to permit defendant to open and close the final arguments to the jury. It is stated that, since defendant had the burden of proving plaintiff's failure to make reasonable efforts to mitigate damages, defendant should have been permitted to open and close the arguments. It is to be noted that an issue at trial was the amount of plaintiff's damages and his entitlement to recover, and plaintiff was required to carry that burden. As stated in *Schmidt v. Farmers Elevator Mutual Ins. Co.,* 208 Kan. 308, Syl. ¶ 6, 491 P.2d 947 (1971):

"Generally it may be said that the party having the burden of proof is entitled to open and conclude the closing arguments, but where the burden of persuasion rests on more than one single proponent the court, in the absence of agreement between the litigants, is clothed with discretion to determine the order in which final arguments may be presented."

Recognizing some advantage of closing argument to the jury, we cannot find in this record an abuse of discretion in denying the defendant that privilege.

Affirmed.