(16 P.3d 314)

No. 84,519

LEAVENWORTH PLAZA ASSOCIATES, L.P., a Kansas limited partnership, *Appellant,* v. L.A.G. ENTERPRISES, a Kansas corporation, *Appellee.*

Opinion filed December 8, 2000.

*Brian L. Smith* and *Jennifer K. Vath,* of Smith & Leonard, of Shawnee, for the appellant.

*Patrick E. Henderson,* Duncan-Senecal Law Offices, Chtd., of Atchison, for the appellee.

Before JUSTICE DAVIS, P.J., GREEN and PIERRON, J.

PIERRON, J.: In this breach of a commercial lease case, Leavenworth Plaza Association, L.P., (Plaza) appeals the trial court's

decision awarding only a portion of damages, denying a month of damages since Plaza failed to mitigate damages, and finding that Plaza was not entitled to any future rents accruing after the date of judgment. Plaza argues the issue of future rents was not pled, the rental obligation created a future monthly obligation, that Plaza's failure to mitigate damages did not preclude future rent judgments, that the trial court's ruling heightened the standards of reasonable mitigation, and that the finding of failure to mitigate damages was not supported by the evidence.

Plaza is a Kansas limited partnership which owns the Leavenworth Plaza Shopping Center. In 1987, Plaza leased space in the shopping center to L.A.G. Enterprises, Inc., (L.A.G.), a Kansas corporation which operated a Pizza Hut in the shopping center. The lease was amended and extended several times over the next 10 years. The most recent amendment extended the period of the lease from 1995 through 2000.

On May 29, 1998, L.A.G. gave written notice that it was ceasing to do business, vacating the premises and terminating the lease. Testimony at trial indicated that L.A.G. made a rental payment in June and then made payments in October, November, and December 1998. On July 23, 1998, Plaza sent L.A.G. a notice of default and demand for payment. On July 30, 1998, Plaza sent L.A.G. a notice of termination of possession.

On August 25, 1998, Plaza filed its first petition seeking to recover $7,757.43 in damages plus any additional amounts as accrued but remaining unpaid under the lease *prior to judgment*. On October 9, 1998, Plaza filed its first amended petition seeking $15,744.81 in damages plus any additional amounts as accrued but remaining unpaid under the lease *prior to judgment*.

After an evidentiary hearing on January 14, 1999, the trial court awarded Plaza damages in the amount of $12,460.50, which reflected 3 months of rent and other obligations due under the lease prior to December 31, 1998. The trial court denied Plaza's claim for damages for the month of January 1999, since the court found Plaza failed to mitigate damages with respect to that month. Although the trial court's comments were not recorded on the record due to mechanical error, the parties stipulated that the trial court

indicated that it was denying relief to Plaza for January 1999 and any future months. Plaza filed a motion to clarify, alter, amend or vacate judgment which was denied by the trial court.

Plaza first raises issues concerning the trial court's jurisdiction to bar the collection of future rents because the issue was not pled in the petition, that each future monthly rental obligation under the lease was an independent obligation not yet accrued, and that Plaza's failure to mitigate damages did not preclude future recovery.

The lease provided that if the tenant vacated or abandoned the leased premises, the lessor could make any repairs necessary to relet the premises and then receive rentals and credit towards the amount owed by the original tenant.

The issue of future rents and damages after the January 1999 judgment was not ripe. Plaza had not set forth a claim for future rents and damages. "An issue is not ripe for adjudication when there is only the possibility of a future controversy between the parties." *Stone v. Kansas State High School Activities Ass'n, Inc.*, 13 Kan. App. 2d 71, Syl. ¶ 8, 761 P.2d 1255 (1988). There is no real controversy between the parties for collection of future rents, only the possibility of future controversy.

Next, Plaza argues there was not substantial competent evidence to support the trial court's decision that Plaza failed to mitigate damages. Plaza also argues the trial court's ruling improperly heightens the standard for reasonable mitigation.

The rules in Kansas regarding a landlord's duty to mitigate were stated in *Lindsley v. Forum Restaurants, Inc.*, 3 Kan. App. 2d 489, Syl. ¶¶ 3, 4, 5, 596 P.2d 1250, *rev. denied* 226 Kan. 792 (1979):

"Where a tenant, under contract to pay rent on real property, abandons the property and notifies the landlord of that abandonment, it is the landlord's duty to make a reasonable effort to secure a new tenant and obtain rent before he can recover from the old tenant under the contract so as to lessen the injury. Following *Gordon, Executor v. Consolidated Sun Ray, Inc.*, 195 Kan. 341, Syl. ¶ 3, 404 P.2d 949 (1965).

"It is a general rule of law that one injured by reason of breach of contract by another is under a duty to exercise reasonable care to avoid loss or to mitigate and minimize the resulting damage. Such reasonable care does not require a party

to execute a new or different contract. Following *Iseman v. Kansas Gas & Electric Co.*, 222 Kan. 644, Syl. ¶ 1, 567 P.2d 856 (1977)."

"The duty to mitigate damages is not an unlimited one and an injured party is required only to exert reasonable efforts to prevent or minimize his damages within the bounds of common sense. Following *Steele v. J. I. Case Co.*, 197 Kan. 554, Syl. ¶ 5, 419 P.2d 902 (1966)."

In *Lindsley*, the court found the lessor exercised reasonable mitigation efforts and was entitled to full recovery for rent and damages. The factors relied upon by the *Lindsley* court were as follows:

"Upon receipt of defendant's [tenant] letter notifying him of the abandonment of the premises, plaintiff contacted Weigand [leasing company], who is recognized by both parties to be among the best qualified in his field, and urged him to be as diligent as possible in securing a tenant. Plaintiff [lessor] made contacts with other realtors and sought the assistance of a local banker. He had extra keys made to permit inspection of the premises. The evidence reveals that the vacancy was advertised and the premises were shown to various prospective tenants. Plaintiff transmitted all proposals of which he had knowledge for the approval of defendant. He did not reject any offers to relet the property, as none were received." 3 Kan. App. 2d at 492.

In this case, L.A.G. had the burden to prove that Plaza failed to exercise reasonable efforts to mitigate damages. See *Kelty v. Best Cabs, Inc.*, 206 Kan. 654, 659, 481 P.2d 980 (1971); *Rockey v. Bacon*, 205 Kan. 578, Syl. ¶ 6, 470 P.2d 804 (1970) ("Mitigation of damages is an affirmative defense and the burden of proving a failure to mitigate losses devolves upon the party who asserts it."); *Lindsley*, 3 Kan. App. 2d at 492.

The determination of reasonable mitigation entails a case-by-case factual examination of the totality of the circumstances. The duty to mitigate is bounded by common sense and reasonableness. *Lindsley*, 3 Kan. App. 2d 489, Syl. ¶ 5. The trial court below found Plaza was not entitled to damages in January 1999 because it failed to mitigate damages. Our review is to determine whether the trial court's decision was supported by substantial competent evidence.

"Where the trial court has made findings of fact and conclusions of law, the function of an appellate court is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. Substantial evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of

fact from which the issues can reasonably be resolved. [Citation omitted.]" *Sampson v. Sampson*, 267 Kan. 175, 181, 975 P.2d 1211 (1999).

Here, the trial court first ruled in favor of Plaza in finding that it was not necessary for Plaza to provide a fresh coat of paint or new floor coverings to the vacant premises. The court stated such improvements were more applicable in the rental of residential property, that Plaza really did not know the needs of the next commercial tenant, and that it would have been impossible to know since L.A.G was storing property on the premises anyway.

The trial court then stated its biggest concern with Plaza's mitigation efforts was that they were not reasonable for a 30-year-old mall, but were geared more toward efforts for leasing space in a new mall which was in demand. The court indicated that after a few months of using approaches for leasing space in a new mall, Plaza had to make some hard decisions. The court stated Plaza should have considered dividing up the space or changing the type of tenant. The court found there was no evidence of efforts to advertise in the local papers. At the later hearing on the motion to amend, the court further commented that the standard for what is commercially reasonable for a brand new mall in a growing area with national realtors competing for space is completely different from what is a commercially reasonable effort to lease a 30-year old mall with minimal improvements. The court stated Plaza should have emphasized advertising in local areas in addition to efforts on a national scale.

The trial court also based its decision on the testimony of David Bayer, the director of retail leasing for the company that managed Plaza. The court focused on Bayer's testimony that the mall was 100% leased. The court stated the company's priority was to have the mall leased, not to fill vacancies.

Other evidence also supports the trial court's decision that Plaza failed to mitigate damages. There was testimony from Plaza that the leasing company discussed the leasing of the premises and also showed the premises to a number of prospective tenants. David Bayer provided such testimony and also indicated that prospective tenants usually like to view vacant premises on their own without

the landlord present. However, it is apparent the trial court did not find this testimony credible. On cross-examination, Bayer could neither give the names of any specific representatives from the prospective tenants who looked at the premises nor the date when Plaza showed the property.

A factor relied upon by the *Lindsley* court was a finding that the landlord did not reject any offers to relet the property. 3 Kan. App. 2d at 492. In the present case, Valerie Hooper, the owner of the Baskin Robbins in the mall, testified that when the Pizza Hut premises was vacant, she inquired into leasing part of it to increase the visibility of her store. She testified that the leasing company told her that the space could not be rented because Pizza Hut was on the lease and Pizza Hut did not want it rented.

Other jurisdictions have held that a landlord's failure to respond to inquiries in renting the vacant premises and in discouraging prospective tenants is cause for a finding that the landlord failed to use reasonable efforts to mitigate damages. See *S.N. Mart, Ltd. v. Maurices, Inc.*, 234 Neb. 343, 451 N.W.2d 259 (1990); *O'Brien v. Black*, 162 Vt. 448, 648 A.2d 1374 (1994).

We find the trial court's decision was supported by substantial competent evidence. It can be reasonably argued that Plaza failed to take reasonable efforts to mitigate its damages. Some of Plaza's complaints are with the trial court's judging of the credibility of the witnesses. The trial court is in the position to judge the witnesses' credibility. An appellate court does not weigh conflicting evidence, pass on credibility, or redetermine questions of fact unless no reasonable person could have acted as the trial court did. That is not the case here. See *Garvey Elevators, Inc. v. Kansas Human Rights Comm'n*, 265 Kan. 484, 496-97, 961 P.2d 696 (1998). We also do not find the trial court's decision heightened the standard of reasonable mitigation for breach of a commercial lease. To the contrary, the trial court examined the totality of the circumstances and used reasonableness and common sense to find that Plaza did not take proper efforts to mitigate its damages.

Affirmed in part and reversed in part.